UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

FREDONIA FARMS, LLC, et al.,

    Plaintiffs,

v.                                                                                                        Case No. 1:12-CV-1005

ENBRIDGE ENERGY PARTNERS, L.P.,                                  HON. GORDON J. QUIST
et al.,

    Defendants.
_____/

**OPINION**

    This case arises from an oil pipeline leak that resulted in the release of crude oil into Talmadge Creek and the Kalamazoo River. The named defendants are various entities in the Enbridge corporate structure that owned, operated, controlled, or maintained the pipeline (Enbridge), and PII (Canada), a company that inspected the pipeline. The remaining plaintiff is Fredonia Farms, LLC, which owned property that was allegedly damaged as a result of the pipeline leak. Plaintiff has asserted a single claim of negligence against PII, and PII has moved for summary judgment. The Court has reviewed the parties' extensive briefing and has held oral argument. For the reasons that follow, the Court will grant PII's motion.

*I. Background*

    Enbridge owns and maintains Line 6B, an oil pipeline that carries heavy crude oil from Canada to Indiana. As part of its integrity management program, Enbridge contracted with PII to inspect Line 6B. (Dkt. #361-1 at Page ID ##8186-87.) In 2005, PII inserted an ultrasonic crack detection tool into Line 6B in Indiana. (Dkt. #361-2 at Page ID #8190.) The tool traveled through

the pipeline and detected cracks by emitting ultrasonic waves. (*Id.*) PII retrieved the tool in Canada and recovered the collected data. (*Id.*) In 2006, PII issued an inspection report that classified the anomalies detected in the pipeline and reported the depth of the detected cracks as a percentage of the pipe's wall thickness. (*Id.*) With regard to the point where the rupture would occur four years later, the report stated that Line 6B had indications of "crack-like" features that were 12.5 % to 25% of the wall thickness depth. (*Id.* at Page ID #8191.)

Between 2005 and 2008, PII learned that its ultrasonic crack detection tool was underestimating the depth of detected crack fields. (Dkt. #356-3 at Page ID #7885.) In response, PII created a new algorithm to more accurately report the depth of crack fields. (*Id.* at Page ID #7885-86.) PII did not re-analyze the data from Line 6B using the new algorithm. (*Id.* at Page ID #7887-88.)

On July 25, 2010, Line 6B ruptured near Marshall, Michigan, and began to leak. (Dkt. #322-1 at Page ID #6341.) The alarms associated with the leak were not recognized as a line-break, and the leak was not addressed for 17 hours. (*Id.*) During that time, Enbridge twice tried to restart the pipeline, pumping thousands of barrels of oil into the line in the process. (*Id.*) The accident resulted in the release of over 20,000 barrels of diluted bitumen, or heavy crude oil. (*Id.*) The oil flowed into Talmadge Creek, which runs across the northeast side of property owned by Fredonia Farms. (*Id.*)

## II. Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. Discussion

Plaintiff asserted that PII was negligent in performing the 2005 inspection of Line 6B because the report it provided to Enbridge contained two errors: (1) the anomalies in Line 6B were classified as "crack-like," which refers to a series of closely spaced cracks, rather than "crack-field," which refers to one continuous linear crack; and (2) the depth of the crack was understated. Plaintiff argues that Enbridge would have excavated the pipeline and repaired the crack if it had been provided with accurate information.

To demonstrate negligence, Plaintiff must demonstrate that (1) PII owed Plaintiff a duty; (2) PII breached that duty; (3) Plaintiff suffered damages; and (4) PII's breach was the cause of Plaintiff's damages. *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*, 489 Mich. 157, 162, 809 N.W. 2d 553, 556 (Mich. 2011). PII argues that Plaintiff cannot satisfy any of those elements.

A.  Duty

Whether a defendant owes any duty to a plaintiff is a question of law. *Dyer v. Trachtman*, 470 Mich. 45, 49, 679 N.W. 2d 311, 314 (2004). To make that determination, courts look to, among other things, "the relationship of the parties, the forseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id.* The relationship of the parties is the most important factor. *In re Certified Question from Fourteenth Dist. Ct. of App. of Tex.*, 479 Mich. 498, 505, 740 N.W. 2d 206, 211 (2007). "[A] duty arises out of the existence of a relationship 'between

3

the parties of such a character that social policy justifies' its imposition." *Dyer*, 470 Mich. at 49, 679 N.W. 2d at 314 (quoting Prosser & Keeton, Torts (5th ed.), § 56, p. 374).

PII contends that it did not owe a duty to Plaintiff because it had no relationship with Plaintiff. PII argues that its only interaction with Plaintiff was that its tool passed through the pipeline on Plaintiff's property at some point. Plaintiff knew nothing of the inspection, or even of PII's existence, until after the oil spill. PII further argues that it was responsible only for inspecting the pipeline, and not for any repairs or maintenance.

PII relies on several cases in which Michigan courts have found that the relationship between the parties was insufficient to create a duty on the part of the defendant. *See Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 663-64, 822 N.W. 2d 190, 197-98 (2012) (the installers of an electric dryer had no duty to warn customers of an uncapped gas line); *Buczkowski v. McKay*, 441 Mich. 96, 103, 490 N.W. 2d 330, 334 (1992) (a retailer who sold firearm ammunition to an intoxicated customer did not owe a duty to a bystander injured by the ammunition because there was no relationship between the retailer and the injured bystander). The Michigan Court of Appeals' decision in *Rakowski v. Sarb*, 269 Mich. App. 619, 713 N.W. 2d 787 (2006), is particularly instructive. In that case, the court held that the inspector of a residential building did not owe a duty to the homeowner's invitee, who was injured on a ramp at the building. *Id.* at 630-31, 713 N.W. 2d at 796. The court explained that it was not foreseeable that the invitee would rely on the inspector to protect her from injuries that occurred due to substandard workmanship because the relationship "was simply too attenuated." *Id.* at 630, 713 N.W. 2d at 796.

Plaintiff argues that the relationship between the parties is not of key importance in this case because PII engaged in active misconduct. Plaintiff points to language in *Ross v. Glaser*, 220 Mich. App. 183, 187, 559 N.W. 2d 331, 334 (1996), which stated that the "special relationship" doctrine

applies only in cases involving the failure to protect, and not those involving active misconduct. However, PII has never argued that the "special relationship" doctrine applies to this case. Rather, PII asserts merely that there must be some relationship between the parties in order to impose a duty, which is well-established under Michigan law. *See Dyer*, 470 Mich. at 49, 679 N.W. 2d at 314; *Rakowski*, 269 Mich. App. at 630-31, 713 N.W. 2d at 796. Accordingly, this argument fails.

Plaintiff next argues that, even if a relationship was required, such a relationship was created when PII agreed to perform the inspection for Enbridge. In support of its argument, Plaintiff relies on *Citizens Insurance Co. of America v. Professional Temperature Heating & Air Conditioning, Inc.*, No. 300524, 2012 WL 5290289 (Mich. Ct. App. Oct. 25, 2012) (per curiam). In that case, the defendant had contracted with a building owner to maintain the building's heating system. *Id.* at *1. After a fire in the building caused by a leaking boiler damaged the building, the tenants sued the defendant. *Id.* at *1. The court held that the defendant was responsible for ensuring that the tenants' units were safely and reliably heated, and that it had a duty to avoid endangering the tenants. *Id.* at *3. The court emphasized that the defendant agreed to perform maintenance for the tenants that they could not perform themselves. *Id.* at *4.

Unlike the defendant in *Citizens*, PII never agreed to perform maintenance for Plaintiff's benefit. Rather, PII agreed only to perform an inspection and provide data to Enbridge. Even if PII had determined that the pipeline required excavation or repair, it could not have performed such maintenance itself. Rather, Enbridge alone determined what actions to take in light of the data that PII provided, and remained solely responsible for maintaining the integrity of the pipeline. Thus, unlike the defendant in *Citizens*, who maintained the heating system for the direct benefit of the tenants, PII did not provide services that directly benefitted Plaintiff. Accordingly, the holding in *Citizens* is inapplicable to the facts of this case.

Finally, Plaintiff argues that PII owed Plaintiff a duty pursuant to § 324A of the Restatement. Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of harm; or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person; or
> >
> > (c) the harm is suffered because of reliance of the other or third person upon the undertaking.

Restatement (Second) of Torts § 324A. Plaintiff argues that PII is liable under § 324A(b) and (c) because it undertook a duty that Enbridge owed to Plaintiff and because Enbridge relied upon PII's undertaking

Subsection (b) is inapplicable because PII did not undertake to perform a duty that Enbridge owed to Plaintiff. Enbridge owed Plaintiff a duty to maintain the pipeline, and it never delegated that responsibility. PII agreed only to inspect the pipeline and provide Enbridge with data. Although those tasks may have been related to the duty that Enbridge owed Plaintiff to maintain the pipeline, PII never undertook to perform that duty itself. As such, Plaintiff's reliance on *McBride v. Pinkerton's, Inc.*, Nos. 202147, 202204, 1999 WL 33439548 (Mich. Ct. App. July 2, 1999) (per curiam) is misplaced. In that case, the court found that a security firm hired by an apartment building's management undertook a duty that the management company owed to the building's tenants—namely, to provide security for their protection. *Id.* at *4. In this case, however, PII never undertook a duty that Enbridge owed directly to Plaintiff.

Moreover, Plaintiff has not shown that Enbridge relied on PII's undertaking (i.e., the inspection and resulting data), as required for liability under § 324A(b). As the commentary to the

6

Restatement explains:

> The actor is also subject to liability to a third person where the harm is suffered because of the reliance of the other for whom he undertakes to render the services . . . upon his undertaking. . . . Where the reliance of the other . . . has induced him to forego other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.

Restatement (Second) of Torts § 324A cmt. e. Plaintiff has not demonstrated that Enbridge relied on the information that PII provided, or that such reliance induced Enbridge to forego other remedies or precautions. As Plaintiff's own expert has admitted, Enbridge should have excavated the pipeline based on the information that PII provided, even if that information was inaccurate. (Dkt. #325-1 at Page ID #6411.) However, Enbridge chose not do so. There is no evidence that Enbridge made that decision because it was relying on the information that PII provided. Simply put, there is nothing in the record demonstrating that Enbridge would have taken other "remedies or precautions" if it had received accurate information.

Plaintiff argues that accurate data would have satisfied Enbridge's excavation criteria and led Enbridge to excavate the pipeline, but it offers no support for this argument. The sole piece of information that Plaintiff cites is a statement that an Enbridge employee made to the National Transportation Safety Board. However, that statement is hearsay and not admissible against PII under any exception to the hearsay rule. *See* Fed. R. Evid. 801. Plaintiff has not provided the excavation criteria itself, or even deposition testimony from Enbridge. Plaintiff has had ample opportunity to uncover admissible evidence to support its theory, but it has not done so.

Moreover, the case cited by Plaintiff in support of its theory under § 324A(c), *Courtright v. Design Irrigation, Inc.*, 210 Mich. App. 528, 534 N.W. 2d 181 (1995), is inapplicable. At issue in that case was whether the defendant, who was retained by the manager of an apartment complex to winterize the building's sprinkler system, was liable for injuries that a tenant suffered after the

sprinkler pipes burst and flooded the complex. *Id.* The court found that § 324A(c) applied because the manager relied on the defendant to perform the maintenance. *Id.* at 531-32, 534 N.W. 2d at 182. As discussed, Enbridge did not rely on PII to perform maintenance, and Plaintiff has failed to demonstrate that Enbridge relied on PII's inspection in making its own decisions regarding maintenance.

PII had a very limited connection to Plaintiff. Its inspection tool passed through a pipeline running through Plaintiff's property in 2005, and it provided information to the owner of that pipeline in 2006. That relationship was too attenuated to create a duty on the part of PII to Plaintiff. Furthermore, PII did not undertake Enbridge's duty to maintain the pipeline, and there is no evidence that Enbridge chose to forego maintenance activities based on PII's inspection and accompanying report. Accordingly, the Court finds that Plaintiff has not demonstrated that PII owed it a duty.

B.     Causation

Even if Plaintiff could establish that PII owed it a duty, its negligence claim would fail because it has not shown that PII's actions were the cause-in-fact of its injuries. To make out a claim for negligence, a plaintiff must show that the defendant was both the actual and proximate cause of the plaintiff's injuries. *See Case v. Consumers Power Co.*, 463 Mich. 1, 7 n. 6, 615 N.W. 2d 17, 20 n.6 (2000) ("[C]ausation is comprised of two separate elements: (1) cause in fact, and (2) legal, or proximate, cause.") "The cause in fact element generally requires that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Skinner v. Square D Co.*, 445 Mich. 153, 162, 516 N.W. 2d 475, 479 (1994).

Plaintiff argues that both PII and Enbridge were the cause-in-fact of Line 6B's rupture. *See Craig v. Oakwood Hosp.*, 471 Mich. 67, 87, 684 N.W. 2d 296, 309 (2004) ("While a plaintiff need

not prove that an act of omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act of omission was *a* cause.") (emphasis in original). Plaintiff asserts that, but for PII providing Enbridge with inaccurate data, Enbridge would have excavated the pipeline and prevented the rupture. As discussed previously, however, Plaintiff provides no admissible evidence supporting that argument. Plaintiff's own expert admitted that Enbridge should have taken action upon receiving PII's report, but it chose not to do so. There is nothing in the record demonstrating that Enbridge would have taken action if it had received different information.

Even assuming that PII owed a duty to Plaintiff, and that it breached that duty by providing Enbridge with inaccurate information, there is no evidence that such action caused the rupture of Line 6B. Thus, Plaintiff has not shown that PII's actions were a but-for cause of its injuries.

### IV.  Conclusion

Plaintiff has not demonstrated that PII owed it a duty or that PII's actions caused its injuries. Accordingly, Plaintiff has not satisfied the elements of its negligence claim, and PII is entitled to summary judgment.

An order consistent with this Opinion shall issue.


Dated: October 3, 2014                              /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE